**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Emilio S.R.-G.,

Petitioner,

v.

Markwayne Mullin, et al.,

Respondents.

No. 26-cv-04184 (KMM/DLM)

**ORDER**

---

Currently before the Court is Emilio S.R.-G.'s ("Mr. S.R.-G." or "Petitioner") second Petition for a Writ of Habeas Corpus. (Case No. 26-cv-04184 (KMM/DLM) ("*SRG II*"), Pet., Dkt. 1.) The Court denied Mr. S.R.-G.'s first petition. (Case No. 26-cv-2189 (KMM/DLM) ("*SRG I*").)[1] Having now considered Petitioner's new claims and the parties' supplemental briefing, the Court finds Petitioner is not entitled to habeas relief.

**BACKGROUND**

Mr. S.R.-G. is a Cuban national who has been living in the United States since 1980. (*SRG II*, Dkt. 1 ¶ 12.) He has been subject to an order of removal since October 28, 1997, but has remained in the United States because of the difficulties surrounding deportation of Cuban nationals. (*Id.* ¶¶ 15–17.) For approximately the last twenty years,

---

[1] The Court denied habeas relief in *SRG I* because Mr. S.R.-G. did not show Respondents violated 8 C.F.R. § 241.13(i). (*SRG I*, Order, Dkt. 14 at 5 (finding Respondents complied with the regulation "by providing Mr. S.R.G. with proper notice of his [Order of Supervision] revocation and an opportunity to contest it").) The Court also found that Petitioner's "noncompliance with the government's efforts to remove [him made] habeas relief inappropriate." (*Id.*, Order, Dkt. 21 at 2.)

Mr. S.R.-G. has been free from ICE custody on an Order of Supervision. (*Id.* ¶ 18) But, in March 2026, ICE re-detained Petitioner upon his release from a Minnesota Correctional Facility in Faribault, Minnesota where had been serving a three-year prison sentence for illegally possessing a firearm. (*Id.* ¶ 20.)

When Mr. S.R.-G. was taken into custody, ICE served him with a Notice of Third Country Removal for Mexico and, days later, served him with a Warning for Failure to Depart and Instruction Sheet providing information about his forthcoming removal. (*Id.* ¶ 21.) Mr. S.R.-G. was then transferred from Minnesota to Arizona to effect his removal. (*Id.* ¶ 22.) Exactly what happened while Mr. S.R.-G. was in Arizona was initially the source of some uncertainty for the Court.[2]

In their supplemental declaration, Respondents assert "Petitioner refused to comply with removal to Mexico at the Florence Staging Facility in Florence, AZ" by "verbally refusing" to consent to his removal. (*Id.*, Dkt. 12 ¶ 8.) Further, they explain that "current ERO policy is that if a detainee indicates unwillingness to go to Mexico, whether by verbally refusing and/or refusing to leave the detention cell or pod, ERO will not physically force them to be transported to the border, because the government of

[2] To address gaps in the factual record, the Court ordered supplemental briefing. (*SRG II*, Dkt. 10). The Order requested additional details about Mr. S.R.-G,'s alleged noncompliance with ICE's March 25, 2026 removal attempt, as well as information about ongoing actions taken by Mr. S.R.-G. that support or rebut the allegation he was continuing to obstruct removal efforts. (*Id.*) Both Respondents and Mr. S.R.-G. timely filed supplemental briefing, which the Court has considered in ruling on his second petition.

Mexico will not accept persons who are demonstrably resistant at the border crossing." (*Id.*)

Mr. S.R.-G.'s most recent declaration squares with Respondents' account. He indicates that while in Arizona, "[m]ultiple ICE officers came to [him] and asked [him] to agree to go to Mexico," but he told "them that [he] would not agree to go to Mexico and that [he] had a right to say otherwise." (*Id.*, Dkt. 14 ¶ 9.). Mr. S.R.-G. recalls that when asked he "would say things like 'I'm not going. I'm not leaving,'" but that he "never yelled at any ICE officers or used abusive or aggressive words with them." (*Id.* ¶¶ 9, 12.) According to Mr. S.R.-G., "ICE has only ever *asked* for [him] to voluntarily agree to go to Mexico. No one with ICE has ever told [him] that Mexico will not accept [him] if [he does] not agree to be deported." (*Id.* ¶ 13 (emphasis added).)

Relying on the new details shared by both parties, the Court now must answer the same question as it did in Petitioner's first habeas case: Is an order requiring immediate release justified based on Mr. S.R.-G.'s contention that his prolonged detention is unconstitutional? The Court finds it is not.

**DISCUSSION**

District courts may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The Petitioner has the burden of proving that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## I. Legal Standard

Under the Immigration and Nationality Act (INA), when a noncitizen has been ordered removed from the United States and that removal order becomes administratively final, the government shall remove the person within a period of 90 days. 8 U.S.C. § 1231(a)(1)(A). This is known as the "removal period." *Id.* During the 90-day removal period, the government must detain the noncitizen who has been ordered removed. 8 U.S.C. § 1231(a)(2). The INA also provides that a person subject to a final removal order "may be detained beyond the removal period" when the Attorney General determines that the person is "a risk to the community or [is] unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). However, the statute does not place a limit on the duration of that discretionary post-removal-period detention.

In *Zadvydas v. Davis*, the Supreme Court placed limits on how long a noncitizen may be detained after the removal period has expired. 533 U.S. 678 (2001). The Court recognized that "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. However, the Court explained that the detention of a noncitizen subject to a final order of removal is permissible so long as the individual's removal is "reasonably foreseeable." *Id.* at 699–700. It held: (1) the detention of an individual for six months or less following a final order of removal is presumptively reasonable; and (2) after six months, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

While *Zadvydas* provides a mechanism for challenging prolonged detention when the government cannot show a significant likelihood of removal in the reasonably foreseeable future, it is not without limitations. For example, a removal period can be extended if a noncitizen "conspires or acts to prevent [their] removal subject to an order of removal." 8 U.S.C. § 1232(a)(1)(C). Courts in this district have held that "when an alien obstructs his removal, he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future" and, as a result, may be detained for longer than the presumptively reasonable six-month period articulated above. *Hydara v. Gonzalez*, No. 07-cv-0941 (PJS/JSM), 2007 WL 2409664, at *2 (D. Minn. Aug. 21, 2007), *aff'd sub nom. Hydara v. Doe*, 324 F. App'x. 534 (8th Cir. 2009). Here, the Court must not only consider whether Mr. S.R.-G.'s removal is reasonably foreseeable, but also whether his alleged noncompliance affects his ability to meet his burden of proof as a threshold matter.

## II. Analysis

Mr. S.R.-G.'s presumptively reasonable six-month detention period has expired. He was taken into ICE custody on March 3, 2026 (*SRG II*, Dkt. 1 ¶ 20) and has been detained since then—totaling around 7 months of continuous detention (*Id.* ¶ 33). But Mr. S.R.-G. has not met his burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Mr. S.R.-G offers three reasons why his removal is not likely to occur in the near future. First, he asserts that Respondents have failed to demonstrate his removal is

imminent. Second, he argues that he has not frustrated his removal, and he contends that Respondents' allegations to the contrary should not be used to justify prolonged detention. And third, he argues that Respondents' improper handling of his third-country removal undercuts any claim Respondents make about Petitioner's alleged failure to comply.[3]

These arguments do not persuade the Court that Petitioner is entitled to habeas relief. The Deportation Officer ("DO") assigned to Mr. S.R.-G.'s removal, Angela Miner, provided details about how ICE will execute Mr. S.R.-G.'s removal order. (*SRG II*, Dkt. 12 ¶ 7 ("The Government of Mexico accepts third country nationals including Cubans . . . for removal at various southern border crossings . . . . Removal missions occur at each land border one to three times weekly dependent on the port of entry capacity. Per information from ICE Headquarters, the combined removal capacity for the above ports of entry is up to 300 third country national removal cases weekly.").) DO Miner also provided an explanation as to why no other travel documentation has been sought for Mr. S.R.-G.: "ERO continues to pursue Petitioner's removal to Mexico, but Petitioner is refusing removal. No travel documents or international flight arrangements are required

[3] In his supplemental briefing, Mr. S.R.-G. acknowledges that "a full third country removal due process claim is not before the Court," but asserts that Petitioner "did plead that he was entitled to such an opportunity, and [that, as such] it can serve as a defense to alleged acts to prevent removal." (*SRG II*, Dkt. 13 at 9.)

for removal to Mexico because removal to Mexico occurs at land borders."[4] (*SRG II*, Dkt. 12 ¶ 20.)

This case is different than others in which the government has offered only conclusory statements about the likelihood of removal. *E.g.*, *Alian C.-L. v. Mullin*, No. 26-cv-2335 (LMP/ECW), 2026 WL 1266167, at *3 (D. Minn. May 5, 2026) ("Courts regularly refuse to find that the Government meets it burden under *Zadvydas* when the Government offers 'little more than generalizations regarding the likelihood that removal will occur' to a third country." (quoting *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)) (collecting cases)); *Luis S.R. v. Mullin*, No. 26-cv-2642 (NEB/DJF), 2026 WL 1790914, at * 3 (D. Minn. June 4, 2026) ("'We're working on it' is not enough to establish a significant likelihood of Luis's removal in the reasonably foreseeable future."). In light of this record, even if Mr. S.R.-G. has carried his initial burden, Respondents have rebutted that showing.

Moreover, Mr. S.R.-G.'s conduct in this matter constitutes frustration of ICE's removal efforts. Mr. S.R.-G. has been told explicitly that ICE has the means to execute his removal "[w]hen [he] decide[s he is] willing to cooperate" and he still refuses to follow such directives. (*SRG II*, Dkt 12 ¶ 15; *see also id.* ¶ 16 ("Petitioner's unwillingness to depart the U.S. is the only impediment to his removal").) At one point, Mr. S.R.-G.

[4] DO Miner's declaration provides specific examples of successful deportations that have occurred for people similarly situated to Mr. S.R.-G. (Dkt. 12 ¶ 16) and specific details about how many other times the St. Paul Field Office has successfully removed Cuban nationals to Mexico in the past year (Dkt. 12 ¶ 21). That evidence suggests Mr. S.R.-G.'s removal is likely to occur in the reasonably foreseeable future, and likely would take place if Mr. S.R.-G. were to comply with the removal process.

allegedly told DO Minner that she "was wasting his time and that he was going to win his case." (*SRG II*, Dkt. 12 ¶ 12.). The Court cannot ignore this statement by Mr. S.R.-G., which suggests that he is aware of the way that his actions affect ICE's ability to execute his removal and is continuing to not cooperate anyway. *Ndenge v. Gonzalez*, No. 07-cv-1726 (MJD/JJG), 2008 WL 682091, at *2 (D. Minn. Mar. 6, 2008).

To be sure, Mr. S.R.-G. hasn't acted aggressively or belligerently towards ICE officers, which makes this a closer call than some cases. *Cf. Akande v. Horgan*, No. 11-cv-11913 (NMG), 2012 WL 1207217, at *1 (D. Mass. Apr. 9, 2012) (holding that petitioner refused to cooperate with removal efforts when he acted in a "belligerent and disruptive" manner). But, Mr. S.R.-G. also cannot leverage his refusal to comply with a process that appears likely to lead to his removal to show that there is no likelihood of removal in the reasonably foreseeable future. *SRG I*, Dkt. 21 at 2–3 ("Mr. S.R.G. remains in custody because he refused his lawful removal from the United States. That noncompliance with the government's efforts to remove him makes habeas relief inappropriate . . . ." (collecting cases)); *see also Luis S.R.*, 2026 WL 1790914, at *4 (collecting cases).

Finally, Mr. S.R.-G. argues that ICE has failed to follow appropriate procedures in its efforts to remove him to Mexico, which is not the country specified in his removal order. Certainly, this Court has recognized that individuals facing third-country removal are entitled to important procedural protections before they can be removed. *See e.g.*, *Samson C.C. v. Easterwood*, No. 26-cv-3588 (KMM/DTS), 2026 WL 2754418, at *7–8 (D. Minn. Sept. 17, 2026) (citing *Ansumana S. v. Blanche*, No. 26-cv-3371 (KMM/DJF),

2026 WL 2606655 (D. Minn. Sept. 3, 2026)). That said, in the third-country removal cases where this Court has found a due process violation, the petitioners had not comparably frustrated their removal but had instead filed habeas petitions squarely challenging such removals and had raised concerns about their safety should they be removed to a particular destination.[5] *Cf. Samon C.C.*, 2026 WL 2754418; *Ahmed S. v. Blanche*, No. 26-cv-2265 (KMM/DLM), 2026 WL 1998718 (D. Minn. July 10, 2026); *Ansumana S.*, 2026 WL 2606655. Despite filing two separate habeas petitioners in recent months, Mr. S.R.-G. has not raised such a claim. Instead, in each petition Mr. S.R.-G. solely challenges his detention.[6] The appropriate remedy, if Mr. S.R.-G. believes that he has not had access to adequate due process with respect to potential third-country removal, is to expressly challenge the third-country removal process used in his case.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED THAT** Petitioner Emilio S.R.-G.'s Verified Petition for a Writ of Habeas Corpus (Dkt. 1) is **DENIED** and this matter is **DISMISSED WITHOUT PREJUDICE.**

---

[5] The Court is aware of no authority holding that, by challenging third-country removal on due process grounds through a habeas petition, a petitioner is frustrating his own removal. Indeed, such a conclusion would be inconsistent with this Court's other decisions in this area.

[6] *See SRG I*, Dkt. 1 (raising four claims: prolonged detention in violation of 8 U.S.C. § 1231 (Claim 1); prolonged detention in violation of Mr. S.R.-G.'s Fifth Amendment substantive and procedural due process rights (Claims 2 and 3); and conduct by ICE that violates the *Accardi* doctrine (Claim 4)) and *SRG II*, Dkt 1 (raising two claims: prolonged detention in violation of 8 U.S.C. § 1231 (Claim 1) and Mr. S.R.-G.'s Fifth Amendment procedural due process rights (Claim 2)).

**Let Judgment be entered accordingly.**

Date: November 23, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge